# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

| | | |
|---|---|---|
| STATE OF WASHINGTON, | ) | NO. 77811-1-I |
| | ) | |
| Respondent, | ) | DIVISION ONE |
| | ) | |
| v. | ) | |
| | ) | PUBLISHED OPINION |
| MARIO ROBERTO GUEVARA DIAZ, | ) | |
| | ) | |
| Appellant. | ) | FILED: January 27, 2020 |
| | ) | |

LEACH, J. — Mario Roberto Guevara Diaz appeals his conviction for second degree rape. He contends that the trial court violated his constitutional right to a fair and impartial jury by allowing a biased juror to serve. He also claims that his trial counsel provided ineffective assistance.

Before voir dire, juror 23 stated, in a juror questionnaire, that she could not be fair to both sides in a trial for sexual assault or abuse. The trial court refused defense counsel's request to question her outside the presence of other jurors to avoid tainting the other jurors. During voir dire, no one asked juror 23 about her answer. She served on the jury that convicted Guevara Diaz.

Juror 23's answer shows actual bias. Because the trial court did not sufficiently oversee the juror selection process or conduct a sufficient

independent inquiry before allowing this apparently biased juror to serve, it did not adequately protect Guevara Diaz's right to a fair and impartial jury. The presence of a biased juror can never be harmless and requires a new trial without a showing of prejudice. So we reverse and remand without considering Guevara Diaz's complaint about his trial counsel.

## FACTS

The State charged Mario Roberto Guevara Diaz with one count of second degree rape and one count of third degree rape. At the beginning of trial, the judge explained to the jury that he and the attorneys would be asking them questions, first with a questionnaire and then orally. The judge told the potential jurors that counsel had prepared a questionnaire and pointed out that each juror had "the opportunity to be questioned outside the presence of the other jurors in the event that certain questions are answered yes."

Question 7 on the questionnaire asked, "Can you be fair to both sides in a case involving allegations of sexual assault or sexual abuse?" Thirteen potential jurors, including juror 23, answered "no." Juror 23 also answered "yes" to these questions, "Have you ever been the victim of a sexual assault or sexual abuse?" and "Has anyone close to you, family or friend, ever been the victim of a sexual assault or sexual abuse?" And she answered "no" to questions asking, "Was the person who assaulted or abused you prosecuted" and whether she or anyone

-2-

close to her had ever been "accused, falsely or otherwise, of committing a sexual assault or sexual abuse."

Thirteen jurors stated that they wished to be questioned outside the presence of other jurors. Seven of them had answered they could not "be fair." Six others, including juror 23, who also answered that they could not "be fair" did not ask to be questioned outside the presence of other potential jurors.

Defense counsel asked the court to allow him to question outside the presence of other potential jurors all 13 jurors who said that they could not be fair to both sides. The court responded, "Well, apparently you would not offend their sensibilities by asking them about that in front of the other jurors. Is there a particular concern I should be aware of?"

Defense counsel replied,

It just seems that if somebody already, without knowing any of the facts of the case, self-selects themselves as being not fit to participate, I think . . . that a juror who's thinking like that carries a real risk of tainting the jury pool by starting to blurt things out in the middle of voir dire, like "I already know the guy did it," which I see happen more often than I like to see.

So I think out of an abundance of caution, I do think it would be appropriate for the Court to ask those seven jurors individually why they answered they could not be fair.

The prosecutor deferred to the court. The judge said that he had "presided over quite a few jury trials, and [had not] seen [a case] where a remark from a potential juror . . . tainted the other panel." He suggested that

> typically, . . . some of [the jurors] don't fully understand what their job is supposed to be and think that the allegation is—is enough.
>
> In other words, they sometimes will say something like, "If your client is guilty, then I . . . can't be fair to him." And that, of course, puts the cart before the horse.
>
> Other ones I think sometimes will . . . say that, because they are, for one reason or another, having a reaction to the subject matter generally—and others possibly have no good reason to say that apart from looking for a reason to get off the jury. And I wouldn't like to say that ordinarily, except I've had enough experience to know that that is another thing that can happen.
>
> . . . . Every trial there are some who say they cannot be fair and impartial. I have not yet seen anybody who has said anything that carried such weight with anybody else that it can taint the other jurors. . . .
>
> At this stage, . . . the purpose of this process is really intended to make [the jurors] comfortable enough to give us the answers that we need to have in open court, and that's the reason why they are outside the presence of the other jurors.
>
> So I'm not inclined to bring . . . the seven that you identified up just to find out . . . why they think they cannot be fair and impartial outside the presence of the other jurors.

Defense counsel said that it seemed to him that the "potential jurors who answered that [they could not be fair] are presumptively not going to be fair in this case. They are going to be 'for cause' challenges."

The judge replied, "They may well be. I fully anticipate that some of them will wind up getting challenged for cause successfully. And depending on what they say, others might not, but we'll have to hear from them first."

The first two jurors that counsel and the court questioned maintained that they were not sure that they could be fair. Defense counsel challenged each for cause. The court dismissed both.

During individual questioning, the court excused seven jurors who said they could not be fair on their questionnaire.

The remaining potential jurors then returned to the courtroom. The court asked these jurors several questions based on questionnaire answers. At one point, the court said, "Question 7, would any of you be unable to assure the Court that you will follow the instructions on the law regardless of what you think the law is or ought to be? And there are no hands."

The prosecutor asked the jurors collectively if anyone thought it would be their "role or any juror's role to compromise a situation because they didn't want someone to get in trouble after a conviction," despite the judge instructing them that their decisions had "nothing to do with punishment that may follow conviction." After one juror answered, the prosecutor asked juror 23 if she understood the question, and whether she would "be able to follow" a judge's

instruction? Juror 23 said, "I would be able to. No compromising. That's for sure."

Later, the prosecutor had the following exchange with the jurors:

[PROSECUTOR]: "Do you all promise that you will give both sides a fair trial in this case?

"Do you agree that the defendant, as he sits here, is presumed innocent until proven guilty? Do you promise to give him a fair trial?

"Do you agree that the State, represented by the prosecutor, . . . has the burden of proof in this case?

"Do you all also agree that the State is also entitled to a fair trial?

"There's a lot of nodding of heads . . . you all mean, yes, right?"

JURORS: "Yes."

[PROSECUTOR]: "Do you promise to give the State a fair trial?"

JURORS: "Yes."

The defense attorney questioned the jurors for about 17 minutes.

The prosecutor then addressed the jurors again. At one point, he discussed the need to be able to follow the court's instructions even if they contradicted a juror's understanding of the law. He concluded with the following exchange:

[PROSECUTOR]: "Can you assure the Court and the attorneys that you will follow the law as given to . . . you by the judge like you've already said that you will do here, regardless of

what you think the law is or should be? Is that a promise that you can make to the Court?

"Back here, same question. Can you all assure the Court and the attorneys that you will follow the law given to you, regardless of what you think the law is?"

JURORS: "Yes."

The defense attorney then finished his questioning.

The court then asked the attorneys if either wished to challenge any other juror for cause. Both answered "no." The defense attorney then exercised all seven of his peremptory challenges, including excusing two jurors who said they could not be fair to both sides. The court seated two jurors who said that they could not be fair, juror 23 and juror 27. Before deliberations, the court identified juror 27 as an alternate juror, who did not participate in deliberations.

The jury found Guevara Diaz guilty of one count of second degree rape and one count of third degree rape. The court vacated the conviction for third degree rape because it violated Guevara Diaz's rights against double jeopardy.

Guevara Diaz appeals.

ANALYSIS

Guevara Diaz asserts that because juror 23 expressed actual bias, the trial court should not have allowed her to serve without further inquiry. We agree.

Guevara Diaz Did Not Waive His Challenge

As a preliminary matter, the State contends that Guevara Diaz waived his challenge to juror 23 because he knowingly failed to challenge her below.[1] We disagree.

This court will consider an issue a party did not raise below if it involves manifest constitutional error.[2] A party demonstrates manifest constitutional error by showing that the issue before this court affects that party's constitutional rights and that he suffered actual prejudice.[3] To show actual prejudice, the party must make a "'plausible showing . . . that the asserted error had practical and identifiable consequences in the trial of the case.'"[4]

A criminal defendant has a federal and state constitutional right to a fair and impartial jury.[5] Seating a biased juror violates this right.[6] Because "'[t]he

---

[1] Guevara Diaz contends that he preserved this issue by asking to question juror 23 outside the presence of the rest of the jury. But his trial attorney did not challenge the juror. Guevara Diaz cites no authority to support the contention that the request for separate questioning is adequate to preserve the issue of a juror's bias for appeal. State v. Logan, 102 Wn. App. 907, 911 n.1, 10 P.3d 504 (2000) ("'Where no authorities are cited in support of a proposition, the court is not required to search out authorities, but may assume that counsel, after diligent search, has found none.'") (quoting DeHeer v. Seattle Post-Intelligencer, 60 Wn.2d 122, 126, 372 P.2d 193 (1962))).

[2] RAP 2.5(a)(3).

[3] State v. Walsh, 143 Wn.2d 1, 8, 17 P.3d 591 (2001).

[4] State v. WWJ Corp., 138 Wn.2d 595, 603, 980 P.2d 1257 (1999) (quoting State v. Lynn, 67 Wn. App. 339, 345, 835 P.2d 251 (1992)).

[5] U.S. CONST. amend. VI; WASH. CONST. art. I, § 22.

[6] State v. Irby, 187 Wn. App. 183, 193, 347 P.3d 1103 (2015) (citing In re Pers. Restraint of Yates, 177 Wn.2d 1, 30, 296 P.3d 872 (2013)).

presence of a biased juror cannot be harmless,'" seating an actually biased juror "'requires a new trial without a showing of actual prejudice.'"[7] "[I]f the record demonstrates the actual bias of a juror, seating the biased juror was by definition a manifest error."[8] A defendant's "failure to challenge . . . jurors for cause at trial does not preclude him from raising the issue of actual bias on appeal."[9]

Because the seating of a biased juror raises an issue of manifest constitutional error, Guevara Diaz did not waive his right to raise the issue of actual bias before this court.

The State cites a number of cases to support its argument. First, it discusses cases where courts prohibited an appellant from raising issues related to other constitutional rights not raised in the trial court.[10] Because none of these cases involve the fundamental right to an impartial jury, we do not find them persuasive.[11] The State also quotes City of Seattle v. Erickson,[12] where the

---

[7] United States v. Gonzalez, 214 F.3d 1109, 1111 (9th Cir. 2000) (quoting Dyer v. Calderon, 151 F.3d 970, 973 n.2 (9th Cir. 1998)).

[8] Irby, 187 Wn. App. at 193.

[9] Irby, 187 Wn. App. at 193.

[10] State v. Hayes, 165 Wn. App. 507, 517, 265 P.3d. 982 (2011); State v. Morgensen, 148 Wn. App. 81, 91, 197 P.3d 715 (2008); State v. Walton, 76 Wn. App. 364, 369, 884 P.2d 1348 (1994); State v. Valladares, 99 Wn.2d 663, 672, 664 P.2d 508 (1983); State v. Bolton, 23 Wn. App. 708, 715, 598 P.2d 734 (1979).

[11] Hayes, 165 Wn. App. at 517 (refusing to consider an appeal based on the failure to raise the confrontation clause below); Morgensen, 148 Wn. App. at 91 (refusing to consider an appellant's contention that the trial judge was biased because he did not raise it below); Walton, 76 Wn. App. at 369 (refusing to consider an appeal based on the failure to raise the confrontation clause below);

Washington Supreme Court said that a "Batson challenge" must "be brought at the earliest reasonable time while the trial court still has the ability to remedy the wrong." But this statement does not require that the issue of juror bias be raised below before this court will consider it. None of the State's cases establishes that the failure to challenge a juror in the trial court waives a defendant's right to a fair and impartial jury.

The State also relies on State v. Jahns,[13] an early case more on point but still not persuasive. In Jahns, a juror heard that a woman was murdered at the place and time central to the case at hand but he made it clear that he had an "impression" that could "yield" to evidence.[14] Defense counsel challenged the juror for cause due to actual bias, the State opposed the challenge, and the court denied the challenge.[15] The State then withdrew its objection. The court permitted defense counsel to challenge the juror again. When the defense counsel did not, the court seated the juror.[16] The reviewing court said, "If the first ruling of the court was wrong, it was withdrawn for the benefit of defendant, and in refusing to take advantage of the court's ruling and interpose a challenge to

---

Valladares, 99 Wn.2d at 672 (refusing to consider an appeal based on defense attorney's affirmative withdrawal of a suppression motion); Bolton, 23 Wn. App. at 715 (requiring a challenge to a judge for bias be made in a timely manner).

[12] 188 Wn.2d 721, 729, 398 P.3d 1124 (2017).
[13] 61 Wash. 636, 637-38, 112 P. 747 (1911).
[14] Jahns, 61 Wash. at 638.
[15] Jahns, 61 Wash. at 638.
[16] Jahns, 61 Wash. at 638.

the juror, an[y] error in the first ruling was waived and cannot now be taken advantage of."[17] Jahns does not address a situation where an appellant failed to raise the issue below, so it does not hold that a failure to challenge a juror for actual bias results in a waiver.[18]

Finally, the State attempts to distinguish State v. Irby[19] and State v. Lawler.[20] There, this court and Division Two allowed appellants to raise the issue of juror bias for the first time on appeal. The State reasons that this case differs from Irby because Irby involved a pro se defendant who did not attend voir dire, so he could not knowingly allow the biased juror to be seated.[21] Irby did present an unusual situation. But the Irby court concluded broadly that "if the record demonstrates the actual bias of a juror, seating the biased juror was by definition a manifest error" and an appellant could raise the issue for the first time on appeal.[22] The court did not rely on Irby's failure to attend voir dire to support its decision, so we reject the State's effort to distinguish Irby.

The State attacks Lawler more generally. It asserts that "the [Lawler] court's decision should not be accepted as authoritative." And it says that "this

---

[17] Jahns, 61 Wash. at 638.
[18] The State also quotes from State v. Reid, 40 Wn. App. 319, 320, 698 P.2d 588 (1985), but this is a Division Two case involving a challenge on the basis of a juror's putative mental disorder, not actual bias.
[19] 187 Wn. App. 183, 193, 347 P. 3d 1103 (2015).
[20] 194 Wn. App. 275, 282, 374 P.3d 278 (2016).
[21] Irby, 187 Wn. App. at 188.
[22] Irby, 187 Wn. App. at 193.

court can and should disagree with" the "erroneous holding" that a party can raise the issue of actual bias on the part of a juror for the first time on appeal. But the Lawler court did not directly discuss the right of the appellant to raise the issue of juror bias on appeal if he had not raised it in the trial court.[23] Instead, it agreed with Irby that seating a juror who expressed actual bias was a manifest constitutional error.[24] Consistent with Irby and Lawler, we conclude that a challenge to a conviction based on a claim of juror bias established by the record involves an issue of manifest constitutional error, so Guevara Diaz did not waive the issue.

Juror 23 Expressed Actual Bias

Guevara Diaz contends that by answering "No" to the fairness question, juror 23 demonstrated actual bias. We agree.

The Sixth Amendment to the United States Constitution and article I, section 22 of the Washington Constitution both guarantee a criminal defendant the right to trial by an impartial jury.[25] To protect this right, a party may challenge a juror for cause.[26] Actual bias provides a basis to challenge a juror for cause.[27]

---

[23] Lawler, 194 Wn. App. at 286 (quoting Irby, 187 Wn. App. at 188).
[24] Lawler, 194 Wn. App. at 286 (quoting Irby, 187 Wn. App. at 188).
[25] The Sixth Amendment states, "In all criminal prosecutions, the accused shall enjoy the right to a speedy and public trial, by an impartial jury." Article I, section 22 of the Washington Constitution states, "[T]he accused shall have the right to . . . a speedy public trial by an impartial jury."
[26] CrR 6.4(c); RCW 4.44.130.
[27] RCW 4.44.170(2); Lawler, 194 Wn. App. at 281.

No. 77811-1-I / 13

A juror demonstrates actual bias when she exhibits "a state of mind . . . in reference to the action, or to either party, which satisfies the court that the challenged person cannot try the issue impartially and without prejudice to the substantial rights of the party challenging."[28] If the court has only a "statement of partiality without a subsequent assurance of impartiality," a court should "always" presume juror bias.[29]

The trial judge has an obligation to excuse a juror where grounds for a challenge for cause exist, even if neither party challenges that juror.[30] "When a trial court is confronted with a biased juror, . . . the judge must, either sua sponte or upon a motion, dismiss the prospective juror for cause."[31] If the court does not remove a biased juror from the panel, "[t]he presence of a biased juror . . . requires a new trial without a showing of prejudice."[32] Because "[a] trial court need not excuse a juror with preconceived ideas if the juror can set those ideas aside and decide the case on the evidence presented at the trial and the

---

[28] RCW 4.44.170(2).
[29] Miller v. Webb, 385 F.3d 666, 674 (6th Cir. 2004) (quoting Hughes v. United States, 258 F.3d 453, 460 (6th Cir. 2001)).
[30] RCW 2.36.110; CrR 6.4(c)(1); see State v. Davis, 175 Wn.2d 287, 316, 290 P.3d 43 (2012), abrogated on other grounds by State v. Gregory, 192 Wn.2d 1, 427 P.3d 621 (2018); see also State v. Jorden, 103 Wn. App. 221, 227, 11 P.3d 866 (2000) (stating that RCW 2.36.110 places "a continuous obligation on the trial court to excuse any juror who is unfit and unable to perform the duties of a juror").
[31] Miller, 385 F.3d at 675 (citing Frazier v. United States, 335 U.S. 497, 511, 69 S. Ct. 201, 93 L. Ed. 187 (1948)).
[32] Irby, 187 Wn. App. at 193 (citing Gonzalez, 214 F.3d at 1111).

-13-

law as provided by the court,"[33] the question the trial court must answer is "whether a juror with preconceived ideas can set them aside."[34]

Because "the trial court is in the best position to determine a juror's ability to be fair and impartial," this court reviews a trial court's decision not to dismiss a juror for manifest abuse of discretion.[35] A trial court abuses its discretion when it bases its decision on untenable grounds or reasons.[36] But the "trial court's broad discretion in the conduct of voir dire is nevertheless 'subject to essential demands of fairness.'"[37]

Recently, in State v. Berhe,[38] the Washington Supreme Court stated that in the case of postverdict evaluation of alleged racial bias during jury deliberations, the investigation "must be conducted under the court's supervision and on the record." In a case of potential juror bias identified during voir dire and not rehabilitated by counsel, a trial judge's "continuous obligation . . . to excuse any juror who is unfit and unable to perform the duties of a juror"[39] required the

---

[33] RCW 4.44.190; State v. Phillips, 6 Wn. App. 2d 651, 662, 431 P.3d 1056 (2018) (citing State v. Rupe, 108 Wn.2d 734, 748, 743 P.2d 210 (1987)), review denied, 193 Wn.2d 1007 (2019).

[34] State v. Noltie, 116 Wn.2d 831, 839, 809 P.2d 190 (1991).

[35] Noltie, 116 Wn.2d at 839; State v. Depaz, 165 Wn.2d 842, 852, 204 P.3d 217 (2009) (citing State v. Elmore, 155 Wn.2d 758, 778, 123 P.3d 72 (2005)).

[36] State v. Powell, 126 Wn.2d 244, 258, 893 P.2d 615 (1995).

[37] Hughes, 258 F.3d at 457 (quoting Wolfe v. Brigano, 232 F.3d 499, 504 (6th Cir. 2000) (Wellford, J., concurring)).

[38] 193 Wn.2d 647, 649-50, 662, 444 P.3d 1172 (2019).

[39] Jorden, 103 Wn. App. at 227.

trial judge to similarly use voir dire to ask juror 23 about her statement that she could not be fair to determine her ability to be impartial.[40]

Neither the defense counsel nor the court questioned juror 23 individually. The prosecutor asked juror 23 if she could follow the judge's instruction in reviewing the evidence even if she did not want someone to be punished. She answered, "I would be able to. No compromising."

The court asked the group, "Question 7, would any of you be unable to assure the Court that you will follow the instructions on the law regardless of what you think the law is or ought to be?" No juror raised a hand in response.[41] Later, the prosecutor asked the jurors a series of questions:

"Do you all promise that you will give both sides a fair trial in this case?

"Do you agree that the defendant, as he sits here, is presumed innocent until proven guilty? Do you promise to give him a fair trial?

"Do you agree that the State, represented by the prosecutor . . . has the burden of proof in this case?

---

[40] See Berhe, 193 Wn.2d at 669-70 (concluding that in a case of potential racial bias, the failure to "exercise sufficient oversight" of trial counsels' postverdict inquiry and the failure of the court itself to conduct a sufficient inquiry, rather than simply relying upon declarations, represented abuses of discretion).

[41] See Johnson v. Armontrout, 961 F.2d 748, 754 (8th Cir. 1992) ("We cannot say that an ambiguous silence by a large group of venire persons to a general question about bias is sufficient to support a finding of fact in the circumstances of this case.").

"Do you all also agree that the State is also entitled to a fair trial?

"There's a lot of nodding of heads . . . you all mean, yes, right?"

JURORS: "Yes."

While the record states that the jurors answered "yes," it does not state how many answered or whether the jurors nodded "yes" to all of the questions or just the final question. And the record does not indicate whether juror 23 responded at all.

Finally, the record also says that jurors answered "yes" when the prosecutor asked if they could "assure the Court and the attorneys that [they would] follow the law as given" to them by the judge "regarding of what [they thought] the law is or should be?" Again, the record does not establish how many responded or whether juror 23 responded.

Juror 23 answered "no" to the question asking, "Can you be fair to both sides in a case involving allegations of sexual assault or sexual abuse?" Later, she answered "yes" to the only question directed to her individually. Her answer established that she would not compromise the verdict even if she were aware of and concerned about the defendant being punished.

None of the group-directed questions required the jurors to state affirmatively that they could be fair to the defense. And the record does not establish that juror 23 responded to any of the group-directed questions.

All that the record clearly shows is that juror 23 said she could not be fair.[42] We conclude that she exhibited actual bias.

The trial court should have addressed this actual bias by questioning juror 23 or allowing defense counsel to question her outside the hearing of other jurors. Under the circumstances of this case, any court questioning also should have occurred outside the hearing of other jurors because of defense counsel's viable concern over questioning potentially biased jurors in front of the jury pool.

The State asserts that the lack of context for juror 23's answer to question 7 undermines a claim of bias. RCW 4.44.170(2) states that actual bias involves a state of mind "in reference to the action, or to either party." While the court must be satisfied that this state of mind means "that the challenged person cannot try the issue impartially and without prejudice to the substantial rights of the party challenging," the statute requires only that the state of mind be in reference to the action.[43] According to the Sixth Circuit in Hughes v. United States,[44] "so long as the judge realized that 'prejudicial fallout existed . . . on which side the prejudice would fall' was a question immaterial to counsel's challenge of a juror for cause." The State does not provide any authority for the proposition that a juror who said she could "not be fair" with respect to the action

---

[42] RCW 4.44.190.
[43] RCW 44.44.170(2).
[44] 258 F.3d 453, 460 (6th Cir. 2001) (alteration in original) (quoting United States v. Nell, 526 F.2d 1223, 1228 (5th Cir. 1976)).

was not actually biased because the record did not show the direction of her bias. While this court gives deference to a lower court's decisions in voir dire, it is hard to imagine a clearer statement of unfairness than a juror answering that she could "not be fair."

Also, because no one questioned juror 23 about her fairness answer, the only insight the record offers about this answer comes from her answers to the rest of the questionnaire and her answer to the prosecutor's question about compromising the verdict. Her answers to the questionnaire include: "yes," that she had been sexually assaulted or abused; "no," that the person who attacked her was never prosecuted' and "yes," that a person close to her had been sexually assaulted or abused. This information does not show the direction of juror 23's bias.

The State also urges this court to conclude that juror 23 established her ability to be fair and put aside preconceived ideas during group questions. Several courts have pointed out that silence and even answers during group voir dire "cannot substitute for individual questioning."[45] And, even if they could, the record here does not establish that juror 23 answered any group question about an ability to be fair.

---

[45] Irby, 187 Wn. App. at 196 (citing Hughes, 258 F.3d at 461); see also Johnson, 961 F.2d at 753-54; Thompson v. Altheimer & Gray, 248 F.3d 626 (7th Cir. 2001).

-18-

The State points to the fact that the trial court and participating attorneys were alert to the possibility of bias.[46] And they were present at voir dire and could evaluate juror responses. So the State asks this court to assume that they determined juror 23 was not biased. As discussed above, the court had an independent responsibility not to seat a biased juror. The record does not show that it received any information showing it that juror 23 could be fair to both sides.

The State cites to Lawler as analogous. In Lawler, the appellant contended that a juror who said his experience involving family members meant he did not "see how [he] could be objective" expressed actual bias.[47] The juror, when pressed by the State, said that it "would be a pain in the neck" to be fair and impartial given his past experience and he did not "think [he] would be able to do that with all these experiences."[48] Division Two concluded he did not exhibit actual bias because his answers were "at least slightly equivocal" and the trial court and defense counsel were aware of the possibility of biased jurors.[49] It

---

[46] For example, the judge, in response to the prosecutor's comment about the review it viewed appropriate to support excusing jurors "for cause," said, "[I]f a juror at the end of questioning maintains that the juror cannot be fair and impartial, even if the juror also thinks the juror will follow instructions in a broad general sense, which is really all we've heard, why, then that is a juror who should not serve." The judge made clear that jurors who did not express the ability to follow the instructions of the court because of the strength of their underlying opinions displayed actual bias and should not be seated.

[47] Lawler, 194 Wn. App. at 283.

[48] Lawler, 194 Wn. App. at 283.

[49] Lawler, 194 Wn. App. at 287-88.

deferred to the trial court and to the defense counsel's need to make strategic decisions during trial without interruption of the court, particularly because defense counsel had not used up all of his peremptory challenges.[50]

Lawler is distinguishable. Here, juror 23's statement was not equivocal. She did not explain her answer, and defense counsel was out of peremptory challenges. Lawler does not help the State.

We reverse Guevara Diaz's conviction and remand for a new trial. In light of this decision, we need not decide Guevara Diaz's claim that his counsel performed ineffectively.

### Statement of Additional Grounds

Guevara Diaz submitted a statement of additional grounds. In light of our decision, we do not address them.

### CONCLUSION

We reverse Guevara Diaz's conviction and remand for a new trial. Juror 23 expressed actual bias in her answer to the questionnaire, and nothing

---

[50] Lawler, 194 Wn. App. at 288-89.

occurred during voir dire to provide any assurance of her impartiality.  So the trial court should not have seated her as a juror.

WE CONCUR:

Leach, J.

Chun, C.J.