**FILED**
**MARCH 11, 2021**
**In the Office of the Clerk of Court**
**WA State Court of Appeals, Division III**

IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON
DIVISION THREE

| | | |
|---|---|---|
| STATE OF WASHINGTON, | ) | |
| | ) | No. 37107-7-III |
| Respondent, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| PRESTON DAVID HARDESTY, | ) | UNPUBLISHED OPINION |
| | ) | |
| Appellant. | ) | |

SIDDOWAY, J. — Preston Hardesty appeals his convictions of second degree trafficking in stolen property and third degree theft, complaining of juror bias, the denial of his motion for a mistrial, and the trial court's reliance on an incorrect offender score at sentencing.

We find no trial court error in the jury selection process, no abuse of discretion in denying the mistrial motion, and no reason to believe Mr. Hardesty's offender score of 13, not 14, made a difference in the sentence imposed. We affirm.

FACTS AND PROCEDURAL BACKGROUND

In September 2018, the Grant County Sheriff's Office investigated an allegation by Jerry Amoruso, a self-employed electrician and mechanic, that his adult stepson, Preston Hardesty, stole Westinghouse copper busing and motor control units and sold them for salvage. Mr. Hardesty lived in a mobile home that belonged to Mr. Amoruso and that was located on the 10-acre property where Mr. Amoruso and his wife, Mr. Hardesty's mother, lived.

Mr. Amoruso made the accusation after he went to a Royal City salvage yard to purchase a battery and the yard manager showed Mr. Amoruso items purchased from Mr. Hardesty that Mr. Amoruso identified as his own. Mr. Amoruso claims he had previously told Mr. Hardesty that "he couldn't have anything of [Amoruso's] unless he came up and asked [Amoruso] specifically to use it or remove it." Report of Proceedings (RP)[1] at 81.

Sheriff's Deputy Alex Aragon was assigned to investigate and spoke with Mr. Hardesty, informing him that Mr. Amoruso claimed property had gone missing and suspected his stepson. Mr. Hardesty responded, "That's what he's always saying" and told the deputy this was the second time in the recent past that Mr. Amoruso had made a complaint about him to police. Ex. 42, Detective Aragon body cam (Sept. 22, 2018) at

---

[1] "RP" references are to the verbatim report of proceedings of the trial unless otherwise indicated.

2 min., 45 sec. through 2 min., 57 sec. (on file with court). Mr. Hardesty claimed that items he had sold to the salvage yard came from other places and persons. He accused Mr. Amoruso of trying to frame him.

Mr. Hardesty was eventually charged with second degree trafficking in stolen property and third degree theft.

Among Mr. Hardesty's pretrial motions in limine was one asking the court to "[p]rohibit and exclude any evidence or testimony that a witness believed a crime had occurred or that the defendant committed a crime." Clerk's Papers (CP) at 111 (underlining omitted). Mr. Hardesty's lawyer explained that the motion was a response to officer interviews of Mr. Amoruso, in which Amoruso "repeatedly accused my client of everything under the sun." RP at 45. He said he feared Mr. Amoruso would go beyond answering the prosecutor's questions about facts and express his opinion that Mr. Hardesty committed the crimes. The prosecutor did not contest the motion.

*Trial: jury selection*

During voir dire, Mr. Hardesty's lawyer asked venire members whether his client could be found innocent if he (defense counsel) did "absolutely nothing," adding, "[u]sually there's one or two that like to argue with me about this." RP at 409. The first juror the defense lawyer questioned on the topic was confused, and even after the lawyer rephrased, said he needed more time to process the question. The defense lawyer then turned to juror 4, saying, "If I don't present any evidence, you only hear what the state

3

has to say, would you find my client guilty because I didn't do anything?" RP at 411-12.

Juror 4 replied:

> Kind of like what he said, it would take a little bit of time to give a full
> answer, but I mean if there isn't anything to back up his defense, then I
> would assume he would be guilty, but it would just have to depend on the
> facts.

RP at 412. Mr. Hardesty's lawyer continued questioning juror 4:

> So he's presumed to be innocent unless the state overcomes that burden and
> proves that he's guilty beyond a reasonable doubt. No matter what I do, the
> state has to prove the charge beyond a reasonable doubt, any doubt for
> which a reason exists, right? The judge already told you that. [The
> prosecutor] kind of hit on it a little bit. I'll say it again, knowing that to be
> true, guilty or not guilty? Based on what I do.

RP at 412. Juror 4 answered:

> This is a very trick [sic] question. It—for my personal reason, it would
> have to be based on the facts, and if it was a well enough defense—like
> backed up on about him being not guilty, then maybe I'd go for that route.
> But if I don't have enough evidence showing that he's not, then I would
> probably go for guilty.

RP at 412.

Mr. Hardesty's lawyer asked, "Who else shares that same opinion?" and, for the record, named several jurors by number, one being juror 26, who raised their cards. RP at 412-13. As he continued to question other venire members along the same lines, several, among them jurors 10 and 12, said that if he did not present a case, they would assume he agreed with the State. When Mr. Hardesty's lawyer moved to strike jurors 10

4

and 12 for cause, the trial court did not immediately rule, but said, "Let me just say something to the jurors," and continued:

> Some of the questions become a little confusing. The requirement is—let me say this: Every crime, every law has certain elements or facts that have to be proven. And let's just call them A, B, C and D, okay, for a crime. The state's required to prove each element beyond a reasonable doubt. And if the state doesn't meet that burden, regardless of what the defendant did or didn't do, if the state doesn't meet the burden, then your requirement is to render a verdict of not guilty. Because they didn't prove it. Even if the defendant does nothing.
>
> To give one simple example, I could give you hundreds, if the state had a case where they needed to prove one of the ABCs or Ds, elements, was prove that a defendant stole over $750. Right? That's one of the elements they have to prove for that degree of theft. If the evidence here in court was the person stole a $50 bill and that's the only evidence, and the prosecutor asks you to find a verdict of guilty for theft over $750, the defendant didn't contest anything here in court as far as the evidence, your requirement would be to enter a verdict of not guilty because the state didn't meet its burden of proving each element beyond a reasonable doubt, regardless of what the defendant does.
>
> Some of the questions can become confusing, I understand that. But I wanted to let everyone know that.

RP at 417-19.

Juror 10 expressed puzzlement why, if the evidence was only $50, the defense would not contest that. The trial court responded that if the State's evidence was that the defendant took only $50, then the defense "wants that evidence . . . So he doesn't want to say anything else." RP at 419. When juror 10 continued to express mixed feelings on the issue, defense counsel renewed his challenges to jurors 10 and 12. The trial court said it would defer ruling until after the prosecutor had his additional 10 minutes of voir dire.

The prosecutor embarked on his own effort to clarify that the sole burden of proof was the State's. Through explanation and questions, he got the explicit agreement of jurors 10 and 12 that if the State did not present enough evidence to prove the crimes beyond a reasonable doubt, they would find Mr. Hardesty not guilty. The prosecutor then said:

> Is everybody okay with that? I just think the way with things being worded it might have been a little confusing. And he doesn't have to present anything, if we don't get to enough, right? That's fair. He doesn't.
>     Even if you'd like to know and hear from him, he doesn't have to testify, he doesn't have to present any evidence. We have to get to that level of beyond a reasonable doubt. Is everybody okay with that concept? Anybody not okay with that?

RP at 427. The record does not indicate that anyone disagreed.

At the conclusion of voir dire, Mr. Hardesty's lawyer withdrew his challenges for cause to jurors 10 and 12. He used peremptory challenges to excuse both of them. He used all six peremptory challenges and both alternate challenges.

Juror 4 was seated on the jury. Juror 26 was seated as an alternate and participated in deliberations when one of the first 12 jurors was excused during the course of the trial.

*Objected-to comments on guilt*

During the State's case, it called as witnesses Mr. Amoruso, Deputy Aragon and Tristina Jensen, the manager of the salvage yard that purchased the allegedly stolen property.

6

During Mr. Amoruso's direct examination by the State, he was asked what caused him to travel to the salvage yard on the day he saw what he believed to be his property. The following exchange occurred:

A.  I needed to replace a battery that turned up missing in a piece of my equipment.

Q.  And when you went there, what occurred?

A.  I was talking to the manager of the yard.

Q.  Is that Tristina Jensen?

A.  Christina (sic), and I don't know what her last name is.

Q.  Okay.

A.  I told her I needed a battery because my other one had either sprouted legs or walked off. She said okay. And I can't remember exactly what I said, but I said, I don't know, maybe Preston borrowed it and didn't put it back, or something along that line. And she said, Preston, Preston—

    [DEFENSE COUNSEL]: Objection, your Honor, motion in limine number I think it was four.

    THE COURT: Okay. At this time we'll be taking the recess anyway . . . .

RP at 82.

After the jury was excused, the trial court said it would sustain the objection. It explained to Mr. Amoruso that what he was doing "is not unusual, a lot of witnesses do it," but there was an order that he was not to state his opinion about guilt or innocence and it was "important to listen closely to the question and just answer those." RP at 84. Upon the jurors' return, the court told them, "The objection that was raised by [defense

7

counsel] is sustained.  The answer to the question is stricken and it is to be disregarded by

the jury."  RP at 85.

During Ms. Jensen's testimony, the prosecutor asked her about the salvage yard's

records of items purchased from Mr. Hardesty while laying a foundation to offer the

records as evidence.  The following exchange occurred:

> Q.    Miss Jensen, did you provide records as it pertains to Mr. Hardesty
> from York Crushing & Salvage to law enforcement at some point?
>
> A.    I believe so.
>
> Q.    Okay.  Now, what led you to provide those documents to law
> enforcement?
>
> A.    What led me to?
>
> Q.    Sure.  Sure.
>
> A.    Well, number one, it was stolen product.
>
> [DEFENSE COUNSEL]: Objection, motion in limine four.
>
> THE COURT: Sustained.  The answer is stricken.
>
> [PROSECUTOR]: May I approach the witness real quick?
>
> THE COURT: Yes.
>
> (Discussion off the record.)
>
> THE COURT: The jury is directed not to consider that answer.
> Go ahead.
>
> [DEFENSE COUNSEL]: Your Honor, he's coaching the witness on
> the stand.  I move for a mistrial.
>
> THE COURT: Okay.  I think he's trying to tell her to comply.  If
> you wanted to be there, you can.
>
> [DEFENSE COUNSEL]: It's too late now.
>
> THE COURT: All right.

8

> [PROSECUTOR]: For the record, there was no coaching of the witness, just indicating the motion that's been previously ordered by the court, I was relaying it to the witness.
>
> THE COURT: Thank you.

RP at 178-80. Defense counsel requested a side bar in which he again requested a mistrial, complaining, "This is the second witness that's done this," and argued the State was supposed to inform witness of in limine orders before they testified. RP at 180. The trial court refused to interrupt testimony for argument at that time. It later denied the motion, explaining that any prejudice could be cured by an instruction, which it invited the defense to propose.

The jury found Mr. Hardesty guilty as charged.

*Sentencing*

At sentencing, the trial court was presented with a prior record agreement signed by Mr. Hardesty and his lawyer that stated, "The Defendant, his counsel, and the State agree as to the offender score of 9+." CP at 249. The State's proposed judgment and sentence identified Mr. Hardesty's offender score as "9+ (14)." CP at 254.

The State requested a high end sentence of 84 months for the trafficking charge and 364 days for the third degree theft (a gross misdemeanor), to run concurrently, citing Mr. Hardesty's long criminal history.

Mr. Hardesty's lawyer asked the court to impose a mid-range sentence of 73.5 months on the trafficking charge and the concurrent sentence requested by the State for

the third degree theft. He pointed out that while Mr. Hardesty had a long criminal history, his last felony was in 2012, and much of his history would have washed out had he not had a third degree driving with license suspended charge. He argued that indigent defendants like Mr. Hardesty get "trap[ped]" because driving without insurance carries a $786.00 fine that they can't afford to pay; they can't get their license back without paying it; but they still need to drive to work and support their families. RP (Sept. 30, 2019) at 115-16.

In announcing its sentencing decision, the court observed that when a defendant has a 9+ score "you maybe start looking at the higher end of the range," but defense counsel's argument assisted it in viewing Mr. Hardesty's situation differently. RP (Sept. 30, 2019) at 121. It also took into account that the charge of trafficking in stolen goods covered a wide range of values and the value in this case was not on either end of the spectrum. It imposed a sentence of 75 months on the trafficking count and 364 days on the third degree theft count. It never referred to Mr. Hardesty having an offender score of 14.

Mr. Hardesty appeals.

## ANALYSIS

Mr. Hardesty alleges juror bias on the part of jurors 4 and 26. He also challenges the denial of his mistrial motion and his offender score, which he argues was 13, not 14.

No. 37107-7-III
*State v. Hardesty*

I.    Juror bias

Both the United States and Washington State Constitutions provide a right to trial by an impartial jury in all criminal prosecutions. U.S. CONST. amend. VI; WASH. CONST. art. I, § 22. Seating a biased juror violates this right. *State v. Guevara Diaz*, 11 Wn. App. 2d 843, 851, 456 P.3d 869 (citing *State v. Irby*, 187 Wn. App. 183, 193, 347 P.3d 1103 (2015), *review denied*, 195 Wn.2d 1025, 466 P.3d 772 (2020). Actual juror bias may be raised for the first time on appeal because "if the record demonstrates the actual bias of a juror, seating the biased juror was by definition a manifest error." *Irby*, 187 Wn. App. at 193; *see also* RAP 2.5. "Both RCW 2.36.110[2] and CrR 6.4(c)(1)[3] create a mandatory duty to dismiss an unfit juror even in the absence of a challenge." *State v. Lawler*, 194 Wn. App. 275, 284, 374 P.3d 278 (2016).

A juror demonstrates actual bias when she exhibits "a state of mind . . . in reference to the action, or to either party, which satisfies the court that the challenged person cannot try the issue impartially and without prejudice to the substantial rights of

---

[2] "It shall be the duty of a judge to excuse from further jury service any juror, who in the opinion of the judge, has manifested unfitness as a juror by reason of bias, prejudice, indifference, inattention or any physical or mental defect or by reason of conduct or practices incompatible with proper and efficient jury service." RCW 2.36.110.

[3] "If the judge after examination of any juror is of the opinion that grounds for challenge are present, he or she shall excuse that juror from the trial of the case. If the judge does not excuse the juror, any party may challenge the juror for cause." CrR 6.4(c)(1).

11

the party challenging." RCW 4.44.170(2). "Equivocal answers alone do not require that a juror be dismissed for cause." *Lawler*, 194 Wn. App. at 283.

Because "'the trial court is in the best position to determine a juror's ability to be fair and impartial,'" this court reviews a trial court's decision not to dismiss a juror for manifest abuse of discretion. *Guevara Diaz*, 11 Wn. App. 2d at 856 (quoting *State v. Noltie*, 116 Wn.2d 831, 839, 809 P.2d 190 (1991)).

All of the cases relied on by Mr. Hardesty in which a juror was found to have exhibited actual bias involved jurors who made unequivocal statements that they could not be fair. He relies on *Guevara Diaz*, a rape prosecution, in which a juror was never questioned about her statement on a juror questionnaire that she could not be fair to both sides in a trial for sexual assault or abuse. 11 Wn. App. 2d at 845. He relies on *Irby*, in which a juror responded affirmatively when the trial court asked if there were any jurors who might not be able to give both sides a fair trial. 187 Wn. App. at 190. Asked why, she explained she had worked for Child Protective Services; said, "I'm more inclined towards the prosecution I guess"; and, asked if she could be fair and impartial and listen to both sides, she answered, "I would like to say he's guilty." *Id.* He relies on *State v. Gonzales*, in which a juror "unequivocally admitted a bias . . . in favor of police witnesses," "indicated the bias would likely affect her deliberations," and "candidly admitted she did not know if she could presume Gonzales innocent in the face of officer

testimony indicating guilt." 111 Wn. App. 276, 281, 45 P.3d 205 (2002). There was no attempt to rehabilitate her.

Here, juror 4 never said she could not be fair to both sides or that she had a bias in favor of any witness or class of witnesses. Instead, her answers revealed that she had not clearly understood the presumption of innocence and that the State alone had the burden of proof. In asking venire members about their view of his role and responsibility, Mr. Hardesty's lawyer volunteered that misunderstandings were common. ("Usually there's one or two that like to argue with me about this." RP at 409.) Juror 4 couched her answers with "maybe," "probably," and an assertion that it was a trick question she would need more time to fully answer. She also repeatedly said guilt or innocence would have to depend on the facts. Juror 26 merely indicated that he shared juror 4's views. While Mr. Hardesty's lawyer challenged jurors 10 and 12 for cause, he did not make for-cause challenges to jurors 4 and 26, from which we can infer that he did not perceive them as biased.

To have an impartial jury, one must have jurors who do not have actual or implied biases for or against one side or the other, or for or against the witnesses or class of witnesses who will provide material evidence. It is not necessary that members of the venire come into court with a full understanding of the criminal legal process. Unlike addressing a venire member's indication of bias, neither the lawyers nor the court are required to drill down on each juror's full understanding of the criminal legal process.

13

Mr. Hardesty does not demonstrate that the trial court abused its discretion when it did not excuse jurors 4 and 26.

## II.    MISTRIAL MOTION

Mr. Hardesty next contends the trial court erred by denying his motion for a mistrial after Mr. Amoruso and Ms. Jensen expressed personal opinions on his guilt in violation of an in limine ruling.

A trial court should grant a mistrial when an irregularity in the trial proceedings is so prejudicial that it deprives the defendant of a fair trial. *State v. Babcock*, 145 Wn. App. 157, 163, 185 P.3d 1213 (2008). More than "a possibility of prejudice" must be shown. *State v. Lemieux*, 75 Wn.2d 89, 91, 448 P.2d 943 (1968). Courts look to three factors to determine whether a trial irregularity warrants a new trial: (1) the seriousness of the irregularity, (2) whether the statement was cumulative of evidence properly admitted, and (3) whether the irregularity could be cured by an instruction. *State v. Perez-Valdez*, 172 Wn.2d 808, 818, 265 P.3d 853 (2011).

Because the trial judge is in the best position to determine prejudice, an appellate court reviews the decision to grant or deny a mistrial for abuse of discretion. *Babcock*, 145 Wn. App. at 163. The standard is extremely deferential. We will reverse the denial of a mistrial only if a trial irregularity was so significant that no reasonable judge would have denied the motion. *State v. Rodriguez*, 146 Wn.2d 260, 269, 45 P.3d 541 (2002).

Mr. Amoruso's thinly-veiled accusation that Mr. Hardesty took a missing battery in the conversation with Ms. Jensen recounted in his testimony ("maybe Preston borrowed it and didn't put it back") was cumulative of other evidence, and consistent with the defense theory. Jurors saw the body cam video of Deputy Aragon's questioning of Mr. Hardesty, in which Mr. Hardesty said his stepfather was "always" accusing him of stealing things. In closing argument, Mr. Hardesty's lawyer told jurors:

> Jerry has got an axe to grind. You heard from Preston when he was talking to the officers that Jerry had been trying to have him evicted. He was trying to kick him off the property. He removed him from the house, the RV, and now he wants him gone.
> . . . .
> So what we have is a situation where Jerry has animosity and bias towards Preston. He wants him out of the house, out of the RV, off the property. He dragged the cops into it alleging Preston cut bus bars out of his [motor control centers].

RP at 322, 325. Mr. Amoruso's testimony was unsurprising and the trial court sustained the objection and told the jury not to consider it. No prejudice is shown.

Ms. Jensen's testimony that she provided records of purchases from Mr. Hardesty to police because "it was stolen product" was also not a serious irregularity. It would have been more accurate to say "it was allegedly stolen product" or was "being investigated,"—and that is how her statement was likely construed by the jury. In any event, sustaining the objection and telling the jury to disregard the testimony was sufficient to neutralize any resulting prejudice.

15

The offending statements were insignificant, and the trial court's response to the objections was clearly adequate. The court did not abuse its discretion by denying the request for a mistrial.

III. OFFENDER SCORE ERROR

Finally, Mr. Hardesty argues resentencing is necessary because the trial court erroneously counted two former convictions that constituted the same criminal conduct as two points.

A trial court calculates a defendant's offender score for sentencing purposes by counting current offenses and past convictions. RCW 9.94A.589(1)(a). Prior offenses that were found to encompass the same criminal conduct are counted as one offense. RCW 9.94A.525(5)(a)(i). The parties' prior record agreement and the judgment and sentence both identify two of Mr. Hardesty's convictions from 2006 as "encompass[ing] with" one another. CP at 248, 253. Mr. Hardesty argues this means his offender score was 13, not 14, as reflected on the judgment and sentence. The State agrees, but argues that resentencing is not required.

We agree. A miscalculated offender score does not require remand if it is clear from the record that the court would impose the same sentence absent the error. *State v. Tili*, 148 Wn.2d 350, 358, 60 P.3d 1192 (2003). "'Where the standard sentencing range is the same regardless of a recalculation of the offender score, any calculation error is

16

harmless.'"  *State v. Priest*, 147 Wn. App. 662, 673, 196 P.3d 763 (2008) (quoting *State v. Fleming*, 140 Wn. App. 132, 138, 170 P.3d 50 (2007)).

Whether Mr. Hardesty's offender score was 13 or 14 did not affect his standard range: either way, he was a 9+.  And it is clear from the trial court's explanation of the sentence it imposed that it was persuaded by defense counsel to disregard much of Mr. Hardesty's criminal history.  Mr. Hardesty's sentence on the trafficking count is only one and a half months longer than the mid-range sentence suggested by the defense.  Remand is unnecessary.

Affirmed.

A majority of the panel has determined this opinion will not be printed in the Washington Appellate Reports, but it will be filed for public record pursuant to RCW 2.06.040.

Siddoway, J.

WE CONCUR:

Pennell, C.J.

Lawrence-Berrey, J.