IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON
DIVISION ONE

| | |
|---|---|
| STATE OF WASHINGTON, | No. 86848-9-I |
| Respondent, | |
| v. | UNPUBLISHED OPINION |
| DE CHI TRAC, | |
| Appellant. | |

BOWMAN, J. — De Chi Trac appeals his jury convictions for two counts of rape of a child in the first degree. He argues that the trial court erred by refusing to dismiss several jurors for cause and that the convictions amount to double jeopardy. Because Trac cured any potential prejudice by striking the alleged biased jurors using his peremptory challenges and it was manifestly apparent to the jury that the State did not seek to impose multiple punishments for the same act, we affirm.

FACTS

In May 2020, 15-year-old C.N. reported to police that when she was around 10 or 11 years old, Trac orally raped her on two separate occasions. C.N. described Trac as a friend of her father who frequently visited their home.

C.N. testified that she did not remember exactly how old she was when the assaults occurred, but she remembered that it was "during that time that [her] dad hung out with [Trac] the most." She said that the first incident occurred in her parents' bedroom. Trac found C.N. in their bedroom and asked if she wanted

to "see something fun." He then raped her on the floor. The second incident occurred "a couple months" later when C.N.'s father was helping Trac paint a house. One day, C.N. went with her father to the house. Trac volunteered to take her to McDonald's because she was "really hungry." He then drove C.N. to a remote part of the neighborhood and raped her in the back seat of his car. Trac told C.N. "not to tell anyone" what happened.

At first, C.N. did not fully appreciate what Trac had done to her. And Trac also began spending less time around her house. So, C.N. did not disclose the assaults. But a few years later, Trac started spending more time around her house again. And as C.N. got older, she began to realize that Trac had raped her. C.N. told her parents about the incidents, and they called the police.

In July 2020, the State charged Trac with two counts of rape of a child in the first degree. The information alleged that the incidents occurred between July 10, 2015 and July 9, 2016. After the State gathered more information, it amended the charging period to between July 10, 2013 and July 9, 2016. The case went to trial in June 2023.

During jury selection, Trac moved to strike for cause jurors 4, 27, and 60. Those jurors all expressed to the court their personal experiences with sexual assault. Juror 4's stepdaughter was a victim of sexual assault. Juror 27 had a personal history of sexual abuse.[1] And juror 60 was a victim of childhood sexual abuse. All three potential jurors told the court that their experiences would not

---

[1] Juror 27 also told the court she was acquainted with the lead detective in the case.

interfere with their ability to serve on the jury or keep an open mind. The court denied all three motions.

Later, defense counsel questioned other potential jurors about their service in the Vietnam War and whether it would impact their ability to impartially serve on the jury, given that Trac is Vietnamese and using an interpreter. Juror 4 did not respond to those questions. Counsel then asked the jury if anyone had concerns with the defendant "being of a different race." No jurors responded to the question.

Defense counsel then began questioning juror 4 about how he would view Trac's choice not to testify. In response, juror 4 did not answer the question. Instead, he referred back to the question about Trac being Vietnamese. He told counsel, "I also want to add I'm a Vietnam era veteran, did not deploy to Vietnam, but trained up for Vietnam . . . . So I got to see how I was . . . trained but also how I was able to also apply the American way of taking care of people." Defense counsel did not question juror 4 about the statement and resumed questioning other jurors about Trac not testifying.

Trac then again moved to excuse juror 4 for cause based on his statement about being a "Vietnam era veteran." The court denied the motion. At the end of voir dire, Trac used three of his six peremptory challenges to strike jurors 4, 27, and 60 from his jury panel.

At the close of trial, Trac asked the court to instruct the jury that to convict him, it must find that the acts supporting the two charges are "separate and distinct" from each other. The court declined to give the instruction with the

3

"separate and distinct" language. Instead, it provided the jury two nearly identical to-convict instructions for each count that outlined the elements of rape of a child in the first degree and referred to the same charging period. And it instructed the jury that "[a] separate crime is charged in each count. You must decide each count separately. Your verdict on one count should not control your verdict on any other count." The jury found Trac guilty of both counts of first degree rape of a child.

Trac appeals.

ANALYSIS

Trac argues that the trial court erred by refusing to strike for cause three potential jurors and that the jury's convictions for two counts of first degree child rape amount to double jeopardy.

1. For-Cause Challenges

Trac argues that the trial court abused its discretion by failing to excuse potential jurors 4, 27, and 60 for cause. The State argues that we should not reach the issue because Trac cured any potential prejudice by using his peremptory challenges to remove the alleged biased jurors from his jury panel. We agree with the State.

Defendants have a federal and state constitutional right to an impartial jury. *State v. Munzanreder*, 199 Wn. App. 162, 174, 398 P.3d 1160 (2017). A jury is not impartial if an actually biased juror sits on a defendant's panel. *State v. Guevara Diaz*, 11 Wn. App. 2d 843, 851, 456 P.3d 869 (2020). But when a defendant uses a peremptory challenge to remove an alleged biased juror, they

cure any potential constitutional violation. *Munzanreder*, 199 Wn. App. at 179 (citing *State v. Yates*, 161 Wn.2d 714, 746, 168 P.3d 359 (2007), *abrogated on other grounds by State v. Gregory*, 192 Wn.2d 1, 427 P.3d 621 (2018)).

Here, Trac alleges that the trial court erred by refusing to dismiss for cause three biased jurors. But Trac used peremptory challenges to remove all three of the jurors. As a result, none of the alleged biased jurors sat on Trac's jury panel. Because Trac cured any prejudice flowing from the court's alleged erroneous rulings, appellate review is not warranted.

Still, Trac argues that *State v. Talbott*, 200 Wn.2d 731, 521 P.3d 948 (2022),[2] and *State v. Smith*, 27 Wn. App. 2d 838, 534 P.3d 402 (2023),[3] leave room for the possibility that a defendant in his circumstance can seek appellate review despite using peremptory challenges to cure any prejudice. But neither case support his argument.

In *Talbott*, the defendant moved to excuse a prospective juror for cause. 200 Wn.2d at 735. The trial court denied the motion, and the defendant did not use a peremptory challenge to remove the alleged biased juror, exhaust his peremptory challenges on other jurors, or object to the jury panel. *Id.* at 735-36. Instead, he affirmatively accepted the jury panel, which included the challenged juror. *Id.* at 736. Our Supreme Court determined the defendant waived his challenge to the trial court's ruling because he failed to exercise a peremptory challenge to eliminate the biased juror and affirmatively accepted the panel. *Id.*

---

[2] *Review denied*, 3 Wn.3d 1008, 551 P.3d 442 (2024).

[3] *Reversed on other grounds*, ___ Wn.3d ___, 555 P.3d 850 (2024).

at 747-48. In doing so, the court limited its holding to the facts of the case and "express[ed] no opinion on the analysis that applies where a party exhausts their peremptory challenges and objects to the jury panel." *Id.* at 732.

In context, it is clear that the *Talbott* court's language refers to a situation where a party objects to a panel that includes an alleged bias juror as a result of the party exhausting all their peremptory challenges on other jurors. But here, Trac successfully used his peremptory challenges to strike the jurors at issue, so no biased juror sat on his panel. And in any event, the record shows that like the defendant in *Talbott*, Trac did not object to the jury panel. Trac's reliance on *Talbott* is misplaced.

In *Smith*, the defendant moved to strike three jurors for cause. 27 Wn. App. 2d at 841. The trial court denied the motions. *Id.* The defendant then used peremptory challenges to strike two of the jurors but exhausted his peremptory challenges and could not strike the third. *Id.* at 841-42. So, that juror sat on the defendant's jury panel. *Id.* at 842. The defendant appealed, challenging the trial court's denial of his for-cause motions. *Id.* at 841-42. We reviewed the court's denial of his for-cause challenge as it related to the juror he could not strike. *Id.* at 843. But we refused to review his challenges to the court's rulings related to the jurors the defendant struck. *Id.* Nothing in *Smith* suggests that Trac is entitled to appellate review when no biased juror sat on his panel.

Finally, citing *State v. Gutierrez*, 22 Wn. App. 2d 815, 513 P.3d 812 (2022), Trac argues that we should apply a special rule when racial bias is at issue, as he alleges was the case with juror 4. In *Gutierrez*, Division Three found

6

constitutional error because a juror expressed racial bias during voir dire. *Id.* at 825-26. The court chose to address the issue on appeal even though counsel did not move to strike or use a peremptory challenge to remove the juror. *Id.* at 819-20. But, unlike the circumstances here, the biased juror at issue in that case actually sat on the defendant's jury panel. *Id.* at 819. So, *Gutierrez* does not suggest that when race is at issue, we should review a defendant's for-cause challenge regardless of whether the juror sits on the panel.

Because Trac's use of peremptory strikes cured any potential prejudice, we do not review the trial court's rulings rejecting Trac's motions to strike for cause.

2. Double Jeopardy

Trac argues that the trial court's failure to instruct the jury that they must find separate and distinct acts to support each count of first degree rape of a child violated his right to be free from double jeopardy. The State argues that no double jeopardy violation occurred because it was manifestly apparent to the jury that the State was not seeking to impose multiple punishments for the same offense. We agree with the State.

We review double jeopardy claims de novo. *State v. Arndt*, 194 Wn.2d 784, 815, 453 P.3d 696 (2019). A court violates a defendant's right to be free from double jeopardy when it imposes multiple punishments for the "same offense." *State v. Noltie*, 116 Wn.2d 831, 848, 809 P.2d 190 (1991). In an effort to avoid multiple punishments for the same offense, the court must instruct a jury that to convict a defendant charged with multiple counts of the same crime, it

must determine that each crime involved facts "separate and distinct" from the other. *See State v. Mutch*, 171 Wn.2d 646, 662-63, 254 P.3d 803 (2011). It is not enough to instruct the jury only that it must decide each count separately and that its verdict on one count should not control its verdict on any other count. *Id.*

Still, flawed jury instructions create only a "possibility of a double jeopardy violation." *Mutch*, 171 Wn.2d at 663. If, viewing the record as a whole, it is " '*manifestly apparent* to the jury that the State [was] not seeking to impose multiple punishments for the same offense' and that each count was based on a separate act," no double jeopardy violation occurs. *Id.* at 664[4] (quoting *State v. Berg*, 147 Wn. App. 923, 931, 198 P.3d 529 (2008)[5]).

In *Mutch*, a jury convicted the defendant of five counts of rape. 171 Wn.2d at 652. The court read to the jury five "nearly identical" to-convict instructions that included the same charging period. *Id.* at 662. The court also instructed the jury that " '[a] separate crime is charged in each count. You must decide each count separately. Your verdict on one count should not control your verdict on any other count.' " *Id.*[6] Mutch appealed the verdicts, arguing the jury instructions were vague and allowed for the possibility of five convictions based on one act. *Id.*

Our Supreme Court agreed that the jury instructions were flawed because they failed to explain to the jury that a "separate and distinct" act must support each count. *Mutch*, 171 Wn.2d at 663. Still, the court concluded that it must look

---

[4] Alteration in original.

[5] *Mutch* abrogated *Berg* on other grounds.

[6] Alteration in original.

beyond the jury instructions to determine whether an actual double jeopardy violation occurred. *Id.* at 664. So, it looked to "the entire trial record" to consider whether it was manifestly apparent to the jury that the State was not seeking to impose multiple punishments for the same offense. *Id.*

A review of the record showed that the victim testified about five separate incidents of rape. *Mutch*, 171 Wn.2d at 665. And in its arguments, the State discussed and distinguished all five acts. *Id.* Finally, the defense did not argue that there was insufficient evidence for any of the rapes. *Id.* Instead, he argued that the victim consented. *Id.* Based on the entire record, the court held that despite the deficient jury instructions, it was manifestly apparent to the jury that each count of rape represented a separate act and no double jeopardy violation occurred. *Id.* at 665-66.

Our Supreme Court applied the same test in *State v. Peña Fuentes,* 179 Wn.2d 808, 318 P.2d 257 (2014). In that case, a jury convicted the defendant of one count of first degree rape of a child and two counts of first degree child molestation that occurred over about 35 months. *Id.* at 823. The jury instructions for the rape charges did not include an instruction that the conduct must have occurred on separate and distinct occasions from the molestation charges. *Id.* But in closing argument, the State identified the specific acts that supported each charge. *Id.* at 825. And it detailed the alleged conduct supporting each count and distinguished them by time and place. *Id.* Further, the defendant did not challenge the number of acts or whether the acts overlapped. *Id.* Instead, he challenged only the witness' credibility. *Id.* Based on the entire record, our

9

Supreme Court again found that while the instructions were improper, it was manifestly apparent that the jury convicted the defendant based on separate and distinct acts. *Id.*

This case is like *Mutch* and *Peña Fuentes*. The trial court erred when it did not instruct the jury that it must rely on "separate and distinct" acts for each count of child rape. But the record shows it was manifestly apparent to the jury that each count represented a separate act.

Throughout the trial, the State was clear that there were two separate incidents that occurred on different dates in two separate locations. The State told the jury in its opening statement, "The defendant raped [C.N.] twice. The first time was at her house." And the second incident occurred "[s]ometime later on a different day" in Trac's car when they went to McDonald's. Then, during direct examination, C.N. testified in detail about two distinct acts that occurred on different dates in different locations. She testified about the first incident in her parent's bedroom and then about the second act that occurred a few months later in Trac's car.

Further, in closing argument, the State separately discussed and described the "two incidences" as "the first rape that was at [C.N.'s] house" and "the rape that occurred when they were going to McDonald's." The State also referred to "count one, which happened at her house, and count two, which happened in a neighborhood somewhere around . . . Olympia." Finally, like the defendant in *Peña Fuentes*, Trac's defense focused on C.N.'s credibility, not the number of rapes or whether they overlapped.

On this record, it was manifestly apparent to the jury that the State sought convictions for two counts of rape based on separate and distinct acts that occurred at different times and in different locations.

Trac argues that it was not manifestly apparent to the jury that the State was relying on separate acts because the State "collapsed" both counts in its closing argument. Trac points to one statement made by the State at the end of its closing argument and one made during rebuttal.

First, after discussing C.N.'s testimony about each of the separate incidents and addressing Trac's arguments about her credibility, the State told the jury in closing that "after hearing all of the evidence, seeing the witnesses, seeing the documents, [and] making your own assessments of their credibility," the State has "proved these elements, each and every one, beyond a reasonable doubt," that "the defendant had sexual intercourse with [C.N.] by licking her vagina in both count one and count two." And in rebuttal, after again describing for the jury the two separate incidents on which the State relied, it told the jury:

> [I]f you have an abiding belief in the truth of the charge after reviewing all the evidence that the defendant raped [C.N.], then the [S]tate has proved it beyond a reasonable doubt. And so the [S]tate asks you again to find the defendant guilty of two counts of rape of a child in the first degree.

We do not find Trac's argument persuasive. First, C.N. testified that in each incident, Trac orally raped her. The prosecutor's comment in closing explained to the jury that each of those acts amounts to sexual intercourse sufficient to convict Trac of both count one and count two. And while the State referred in rebuttal to an abiding belief in the truth of "the charge" to support "two

11

counts" of rape, it is clear in context that the prosecutor was explaining the State's burden necessary to prove each count of child rape. In the context of the record as a whole, these two isolated statements do not suggest that the State sought two convictions for child rape based on the same act.

Because the record shows it was manifestly apparent to the jury that the State sought convictions for two counts of child rape based on two separate and distinct acts, no double jeopardy violation occurred.

We affirm Trac's convictions.

_____, J.

WE CONCUR:

_____          _____
Díaz, J.                                      Mann, J.