IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON
DIVISION ONE

| | |
|---|---|
| STATE OF WASHINGTON,<br><br>                    Respondent,<br><br>        v.<br><br>JOSHUA ROBERT DURAN,<br><br>                    Appellant. | No.  86403-3-I<br><br>ORDER GRANTING<br>MOTION TO WITHDRAW<br>AND SUBSTITUTE<br>OPINION |

Respondent State of Washington moved to withdraw the unpublished opinion filed on December 1, 2025 and substitute it with one that replaces the sexual assault victim's full name with her initials.  The panel considered the motion and determined that the motion should be granted.

Now, therefore, it is hereby

ORDERED that the respondent's motion to withdraw and substitute the opinion filed on December 1, 2025 is granted; it is further

ORDERED that the unpublished opinion filed on December 1, 2025, is withdrawn; and it is further

ORDERED that a substitute unpublished opinion be filed replacing the sexual assault victim's full name with her initials; the remainder of the opinion shall stay the same.

_____

_Díaz, J._                          _Chung, J._

IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

| | |
|---|---|
| STATE OF WASHINGTON, | No. 86403-3-I |
| Respondent, | DIVISION ONE |
| v. | |
| JOSHUA ROBERT DURAN, | UNPUBLISHED OPINION |
| Appellant. | |

SMITH, J. — In May 2012, Joshua Duran forced K.E. to have sexual intercourse with him. K.E. underwent a Sexual Assault Nurse Examination (SANE) and the DNA found on her matched Duran. Duran was charged with rape in the second degree.

Before trial, Duran moved for new counsel. The court denied this request. Duran also moved in limine requesting that any general reputation evidence about Duran's drug or alcohol use not be admitted, which was granted. During voir dire, and in their responses to the juror questionnaire, juror 27 expressed some concern about whether they could be impartial. Juror 27 was impaneled.

The jury found Duran guilty and the court sentenced Duran to 240 months to life. Duran appeals. We affirm but remand for the court to strike some of the community custody provisions.

## FACTS

### Background

In May 2012, K.E. was riding in a car with an acquaintance and three people unknown to her, one of whom was Joshua Duran. They drove to an apartment building in Birch Bay, and everyone except Duran and K.E. exited the vehicle. Duran then forced K.E. to have sexual intercourse with him. The next day, K.E. went to the hospital and underwent a Sexual Assault Nurse Examination (SANE).

Six months later, the kit returned a positive DNA match for Duran. In March 2021, Sergeant Courtney Polinder of the Whatcom County Sheriff's Office contacted Duran, who was in custody with the Bureau of Prisons at a reentry facility in Seattle. During the interview, law enforcement asked if Duran recalled being in Birch Bay at the time of the event. Duran responded that he moved to Birch Bay around that time and was into drugs so his memory of the time was not that good. But Duran denied knowing K.E. or having sex with her. The State charged Duran with rape in the second degree.

### Duran's Motion for New Counsel

Trial was set for October 2023. In May 2023, Duran moved for new counsel, asserting that his appointed attorney, Larson, did not know what was going on with Duran, did not interview witnesses, and did not present Duran with his defense. The State opposed the motion. The court denied Duran's motion, finding there was no convincing evidence regarding lack of confidence on the

part of assigned counsel, nor was there a basis for conflict of interest. The court found that Larson was competent to proceed with the case.

## Defense's Motion in Limine

Prior to trial, Duran moved in limine requesting the court to deny admittance of evidence of Duran's drug use at trial. The court granted Duran's motion in part, holding that any sort of general reputation evidence about Duran's drug or alcohol use was not admissible. However, drug and alcohol evidence could be brought in if it was related to the circumstances of the alleged crime. The court also granted motions to exclude referring to K.E. as a "victim," and prohibiting the State from making deliberate appeals to the jury's passion or prejudice.

## Jury Selection

In response to the question on the jury questionnaire, "Do you believe you cannot serve on this jury because of the subject matter of the charge," juror 27 responded yes, noting they found "a charge of rape to be repugnant" and they had "difficulty with understanding how/why someone would commit the crime." During voir dire, the attorney for the State asked if anyone felt like the charge itself would be a barrier to being a fair juror. Juror 10, 25, and 27 raised their hands. The State then questioned juror 10 on their thoughts on the charge. Juror 10 replied that this was a heinous crime and that got them thinking a little bit about the complexities in "deliberating biases with the distance of time and burden of proof." The State asked if juror 10 started walking through what the facts could be. Juror 10 replied yes. After questioning juror 10, the State asked:

3

[State]: Do you think given the charge and given the information you have there is a barrier to you being able to fairly listen to the evidence in the case and follow the Judge's instructions?

Juror []10: I don't think so, yeah.

[State]: You can't say a hundred percent sure, right?

Juror []10: Right, because I don't have the information like you say.

[State]: But you think you could be fair?

Juror []10: Yes.

[State]: You think you could listen to the evidence in the case?

Juror []10: Yes.

Then, the State asked for juror 27's thoughts. Juror 27 expressed, "I think the charge itself influences or has thwarted my ability to react fairly." The State followed up with juror 27, asking if they thought would be a barrier in their ability to focus on the evidence as it is presented. Juror 27 replied, "No, I certainly think I could focus on the evidence. I just think that there is . . . a bias that is probably not rendering, allowing me to render a fair judgment about it." The State then asked if juror 27's bias would be so strong that they would not hold the State to its burden of proof. Juror 27 responded, "No." The State asked if they thought their bias would knock down the burden of proof, allowing the State to not prove the case all the way. Juror 27 replied, "Well, no, no, no. Well, I don't know, you know, this is my first experience on a jury so I don't know. I really don't know the answer to that." The court concluded questioning and recessed for lunch.

During the recess, juror 21 saw Duran running from the courthouse and called 911. Juror 21 took several photos of him running by the building. When court was scheduled to resume, Duran was not present in the courtroom and his

location was unknown.  An hour later, Duran appeared and spoke to a number of jurors on his way into the courthouse.  Once court resumed, the judge spoke to juror 21 outside the presence of the rest of jury after which juror 21 was released.  In addition to juror 21, the court inquired individually of five other jurors who stated they had interactions with or observed Duran outside of the courtroom.[1]  One of those jurors was released.[2]  Duran moved for a new venire and the court denied the challenge, concluding that the jurors' interactions with Duran would not influence them in any way.  Duran did not challenge for cause or use any of his peremptory challenges on juror 27, and juror 27 was impaneled.

<u>Evidence Presented During Trial</u>

During trial, Sergeant Polinder testified that his encounter with Duran at the reentry facility was "a general interview, basically to see if he knew the victim in this case, Kim."  Duran objected to Sergeant Polinder's reference to K.E. as a "victim" based on the granted motion in limine.  The judge gave a curative instruction and the testimony was not stricken.  The court also held that a mistrial was not appropriate, because it was not a serious violation and it was cumulative of other properly admitted evidence.

When Sergeant Polinder's testimony resumed, the State asked what Duran's response was to being in the general area of Birch Bay.  Sergeant

---

[1] Jurors 10, 12, 16, 33, and 46 stated they had interactions with Duran outside the courtroom.

[2] Juror 16 stated that seeing Duran running from the courthouse created a bias and court instructions would not be able to address the bias.  Juror 16 was dismissed.  Jurors 10, 12, 33, and 46 testified that interactions with Duran would not influence their ability to be a fair and impartial juror.

Polinder testified that Duran mentioned "around the time he had been living in Spokane area and was into drugs, heavy drug user at the time." Duran did not object to Sergeant Polinder's statement.

During K.E.'s testimony, she stated that when she was riding in the car with Duran, Duran told her that he just got out of jail. Duran objected and the court issued a curative instruction. She also testified that in 2019, she completed a yearlong treatment and had not engaged in drug use since. The State then asked if K.E. considered herself in the same place today as she was in 2012. Duran objected and the court overruled the objection. K.E. responded, "I'm not in the same place as I was in 2012 because I went and got my life together and went to treatment and completed treatment and I'm proud to say I have four years clean and sober."

Later, the State asked K.E. to elaborate on a previous statement where K.E. said if she did not block out what happened, she would not be here today. K.E. responded, "Suicide. I've thought about it. But if I did that, I wouldn't be here." Duran objected based on relevance and enflaming the passions of the jury. The court overruled the objection.

The defense called Shane Weihe as a witness and after the conclusion of his testimony, Duran asked to speak with the judge in chambers. The court denied this request, ruling that Duran could address whatever he wanted to say through his lawyers. Larson then stated that the defense would be resting. The judge and attorneys discussed jury instructions, and the court subsequently instructed the jury. The State gave its closing argument.

6

During the defense's closing argument, juror 12 stated they were "going to get sick" and the court took a break. During this break, Duran indicated to the court that he had a question, the court told him to mention it to Larson and the court would entertain it. Larson then stated that he guessed the question Duran wanted to know is if it was too late to present evidence and that he told Duran that the evidence portion of the trial had concluded and there was no more chance for testimony. The court then stated that it had closed evidence earlier that day and it was not going to grant a request to open it at that point in the trial. Duran then responded, "I was told I was going to be able to give my side." The court brought in the jury and continued proceedings.

<u>Sentencing and Community Custody Conditions</u>

The jury found Duran guilty of rape in the second degree and the court sentenced him to 240 months to life. The court imposed community custody conditions, in the event Duran was released before the statutory maximum sentence. In part, the conditions included that Duran must: (1) remain within the geographic boundary, as set forth in writing by the Department of Corrections (DOC); (2) submit to periodic polygraph assessments at his own expense; (3) consent to DOC home visits; (4) refrain from consuming, possessing and purchasing alcohol; and (5) refrain from entering a business where alcohol is the main commodity.

Duran appeals.

ANALYSIS

Right to Fair Trial by an Impartial Jury

Duran asserts that he was denied his right to fair trial by an impartial jury because of the presence of a biased juror, and the court violated its obligation to remove a juror who expressed an inability to fairly serve. The State contends that Duran was not deprived of a fair trial and waived his right by not challenging for cause or striking the juror with a preemptory challenge. Even if Duran did not waive his right, the State insists that the trial court acted within its discretion when it did not interfere in the jury selection. We agree with the State.

The court will consider an issue not raised by a party if it concerns a manifest constitutional error. RAP 2.5. A party establishes a manifest constitutional error when they show that the issue affects their constitutional rights and they suffered actual prejudice. *State v. Guevara Diaz*, 11 Wn. App. 2d 843, 851, 456 P.3d 869 (2020). Actual prejudice is shown when the party makes a "plausible showing . . . that the asserted error had practical and identifiable consequences in the trial of the case." *Guevara Diaz*, 11 Wn. App. 2d at 851 (alteration in original) (internal quotation marks omitted) (quoting *State v. WWJ Corp.*, 138 Wn.2d 1, 8, 17 P.3d 591 (2001)).

This court reviews the court's obligation to remove a juror for abuse of discretion. *Guevara Diaz*, 11 Wn. App. 2d at 856. "A trial court abuses its discretion when it bases its decision on untenable grounds or reasons." *Guevara Diaz*, 11 Wn. App. 2d at 856. Without an abuse of discretion, a court's ruling on

8

the scope and content of voir dire will not be disturbed on appeal. *State v. Smith*, 3 Wn.3d 718, 725, 826, 555 P.3d 850 (2024).

"Trial judges are 'in the best position to determine a juror's ability to be fair and impartial ... [because they] can observe the demeanor of the juror and evaluate and interpret the responses.' " *Smith*, 3 Wn.3d at 724-25 (alterations in original) (quoting *State v. Noltie*, 116 Wn.2d 831, 839, 809 P.2d 190 (1991)). Under CrR 6.4(c), if a judge determines that grounds for challenge are present for any juror, the judge "shall excuse that juror from the trial of the case." RCW 2.36.110 further supports the duty of the judge to excuse a juror that "has manifested unfitness as a juror by reason of bias [or] prejudice." If the court has only a " 'statement of partiality without a subsequent assurance of impartiality,' a court should 'always' presume juror bias." *Guevara Diaz*, 11 Wn. App. 2d at 855 (quoting *Miller v. Webb*, 385 F.3d 666, 674 (6th Cir. 2004)). But our courts stress that trial judges should "tread carefully" and " 'exercise caution before injecting itself into the jury-selection process.' " *In re Pers. Restraint of Perry*, 29 Wn. App. 2d 734, 747, 542 P.3d 168 (2024) (quoting *State v. Lawler*, 194 Wn. App. 275, 284, 374 P.3d 278 (2016)). If not, "a trial court that excuses a juror sua sponte risks disrupting counsel's jury-selection strategy." *Perry*, 29 Wn. App. at 747. If a court does not excuse a biased juror, the court must order a new trial. *Guevara Diaz*, 11 Wn. App. 2d at 855.

Here, Duran did not raise the issue of prejudice during trial. Therefore, Duran must establish manifest constitutional error. Duran did not establish actual

9

prejudice from juror 27 sitting on the jury.  Consequently, Duran waived his right to assert that he did not receive a fair trial by an impartial jury.

Even if Duran did not waive his right to raise the issue of an impartial jury, the trial court did not err by not dismissing juror 27.  Our court has found that a judge has the duty to dismiss a potential juror when the juror makes a statement of bias, the State does not ask follow up questions, and the defendant is pro se. *See State v. Irby*, 187 Wn. App. 183, 197, 347 P.3d 1103 (2015) (holding that a juror demonstrated actual bias when they stated "I would like to say he's guilty").  Here, both sides were represented by counsel and followed up with juror 27 about their biases indicated on the questionnaire.

Additionally, juror 27's questionnaire answer expressing some bias must be viewed in light of the totality of the circumstances of voir dire.  While questioning the potential jurors, the State asked, "Is it fair to say everyone is generally opposed to sexual assault?"  All jurors nodded in response to the State's question.  In response to follow up questions, juror 27 stated that they did not think there was a barrier to them being able to fairly listen and focus on the evidence in the case and follow the judge's instructions.  Juror 27 added that there was a bias (against the nature of the offense) that was probably not allowing them to render a fair judgment.  Juror 27's statements show that they had a bias against rape, but the record does not reflect that bias extended to Duran's case.  Juror 27 also indicated that they certainly thought that they could focus on the evidence and that they did not think their bias was so strong that they would not hold the State to its burden of proof.  Our courts have stressed

10

that there is a distinction between a "juror who says he or she cannot be fair, without redemption, and a juror who only expresses reservations." *State v. Phillips*, 6 Wn. App. 2d 651, 666, 431 P.3d 1056 (2018). Here, juror 27 may have expressed reservations, but the totality of the circumstances did not require the trial court to remove them.

Moreover, Duran was represented by two lawyers, defense attorney Larson and defense attorney Arnold, and neither of them sought to remove juror 27 for cause or used a peremptory challenge on them. The decision not to strike juror 27 may have been strategic. Later in voir dire, the State asked if a reference to drugs or alcohol, or that a party used drugs or alcohol, would create a judgment that would cloud their ability to hear the evidence in the case. Juror 27 raised their hand and responded, "Isn't it naive to think that if drugs or alcohol are involved that there is not some change in behavior?" Duran's counsel may have seen juror 27's comments favorable to his consent defense. Duran's theory of the case was that K.E. fabricated the rape allegation. When the crime occurred in 2012, K.E. testified that her life was "drug induced." In addition, K.E. knew the driver of the car because he had previously sold her drugs. The defense could have seen a potential correlation between juror 27's comment about the impact of drugs on behavior and K.E.'s credibility because of her admitted past drug addiction.

Here both the State and Duran followed up with questions for juror 27 after they made a general statement of bias based on the nature of the charge against Duran. Both parties and the court were able to consider juror 27's responses,

their tone, and their demeanor as they indicated that they could focus on the evidence and would hold the State to its burden of proof. We find no error.

<u>Right to Counsel</u>

Duran contends that the court erred when it refused to meaningfully inquire into Duran's concerns about his counsel. Duran asserts that the court violated his fundamental right to counsel.

The State maintains that the court did not err because it meaningfully inquired into Duran's complaints about his trial attorney. We conclude that Duran's right to counsel was not violated.

The standard of review for the right to counsel is abuse of discretion. *State v. Varga*, 151 Wn.2d 179, 200, 86 P.3d 139 (2004). "Whether an indigent defendant's dissatisfaction with his court-appointed counsel is meritorious and justifies the appointment of new counsel is a matter within the discretion of the trial court." *State v. Stenson*, 132 Wn.2d 668, 733, 940 P.2d 1239 (1997). If a defendant is dissatisfied with appointed counsel, they must show good cause to warrant substitution of counsel. *Stenson*, 132 Wn.2d at 734. Good cause may include a conflict of interest, an irreconcilable conflict, or a complete breakdown in communication between the attorney and the defendant. *Stenson*, 132 Wn.2d at 734. Under Rules for Appellate Procedure (RAP) 10.3(6), the appellant must make arguments in support of the issues presented for review.

Factors to be considered in a decision to grant or deny a motion to substitute counsel are (1) the reasons given for the dissatisfaction, (2) the court's own evaluation of counsel, and (3) the effect of any substitution upon the

scheduled proceedings. *State v. Stark*, 48 Wn. App. 245, 253, 738 P.2d 684 (1987). A trial court conducts an adequate inquiry when it allows the defendant and counsel to express their concerns fully. *State v. Schaller*, 143 Wn. App. 258, 271, 177 P.3d 1139 (2007). "Formal inquiry is not always essential where the defendant otherwise states his reasons for dissatisfaction on the record." *Schaller*, 143 Wn. App. at 271. A defendant's loss of confidence in their counsel is not sufficient to appoint new counsel. *Varga*, 151 Wn.2d at 200. Furthermore, a conflict over strategy does not constitute a conflict of interest. *State v. Cross*, 156 Wn.2d 580, 607, 132 P.3d 80 (2006), *abrogated on other grounds by State v. Gregory*, 192 Wn.2d 1, 427 P.3d 621 (2018).

Before trial, spanning from March to July 2023, Duran moved four times to remove assigned counsel and appoint another attorney.[3] Duran claimed that Larson did not have the time to communicate with Duran and investigate his case. In Duran's April motion to appoint another attorney, Duran asserted Larson failed to (1) build a solid defense, (2) secure and obtain witnesses, (3) review evidence and obtain Medical Evaluation, and (4) establish whether K.E. was under the influence of drugs and alcohol. In the May 2nd hearing for Duran's motion for new counsel, he testified that he did not feel comfortable with Larson representing him at trial. Duran asserted that Larson asked him to ask a witness to go to the prosecutor's office for an interview, did not give him information when he asked, and did not have his best interest at hand. Larson

---

[3] Duran filed motions for another attorney on March 27th, April 28th, May 30th, and July 25th.

declared that he and Duran were at a standstill and they were "not working right now."

Although Duran's testimony showed disagreements between him and Larson, this does not rise to the level of a complete breakdown of communication. In *Brown v. Craven*, the Ninth Circuit found that a complete breakdown in communication occurred when Brown did not cooperate with or communicate with his attorney in any manner. 424 F.2d 1166, 1169 (9th Cir. 1970). Unlike *Brown,* Duran testified that he kept in contact with Larson throughout his case and asked Larson questions about calling witnesses. Duran also stated that he received e-mails from Larson's office when he requested them. These communications show that Larson and Duran were able to communicate about Duran's case. In addition, Duran was also represented by another attorney, Arnold.[4]

Because Duran fails to demonstrate that his relationship with Larson suffered a complete breakdown of communication or contained irreconcilable conflict, we find no error.

Duran also contends that it was error for the court to deny his request to discuss his issues with counsel in chambers. Due process requires an in camera review of otherwise privileged or confidential information when the defendant adequately demonstrates that the information is material. *State v. Jobe*, 34 Wn. App. 2d 471, 482, 569 P.3d 331 (2025). Here, Duran did not mention privileged

---

[4] Arnold began representing Duran in court on September 15, 2023.

or confidential information that would trigger an in-chambers review. Because no justification for an in camera review exists, the trial court did not err.

Duran's right to counsel was not violated.

Right To Testify

Duran asserts that he was deprived of his right to testify in his own defense. The State contends that Duran did not demonstrate that his attorneys frustrated his ability to testify on his own behalf. We agree with the State.

Article I, section 22, of the Washington Constitution gives criminal defendants the right to appear and defend in person. *State v. Thomas*, 128 Wn.2d 553, 562, 910 P.2d 475 (1996). "In general, the waiver of a fundamental constitutional right must be made knowingly, voluntarily, and intelligently." *Thomas*, 128 Wn.2d at 558. A trial judge is not required to advise a defendant of the right to testify for a waiver of the right to be valid. *Thomas*, 128 Wn.2d at 559. The right to testify does not require that the trial court obtain an on-the-record waiver of the right. *Thomas*, 128 Wn.2d at 559. If a defendant asserts that their attorney prevented them from testifying, the courts must determine if the defendant's attorney actually prevented the defendant from testifying, versus merely advising them against testifying as a matter of trial strategy. *State v. Robinson*, 138 Wn.2d 753, 763, 982 P.2d 590 (1999). A defendant can prove that their attorney actually prevented them from testifying if they can prove that their attorney used coercive tactics to prevent them from testifying or "that the attorney refused to allow him to testify in the face of the defendant's unequivocal demands that he be allowed to do so." *Robinson*, 138 Wn.2d at 764.

15

Duran challenges that the court should have had reason to believe Larson frustrated Duran's efforts to testify. During trial, Duran asked to speak with the judge in chambers, but he did not raise a concern that Larson inhibited his ability to testify. Additionally, when Duran stated that he wanted to give his testimony, both parties had rested and were in closing arguments. Duran did not provide any evidence that Larson suppressed his right to testify.[5] Because Duran did not raise any concerns about his attorney when remarking on his desire to testify, the court did not have reason to believe that Larson frustrated Duran's right to testify. Duran's right to testify was not violated.

Prejudicial Evidence

Duran contends that the court erroneously admitted unfairly prejudicial evidence when it allowed comments about Duran's drug use, referring to K.E. as a victim, and K.E.'s drug rehabilitation and suicidal thoughts. Duran claims that the court's cumulative failure to meaningfully cure the improperly elicited evidence denied his right to a fair trial. The State claims any error was cured and the alleged cumulative errors do not warrant a new trial. We agree with the State.

A trial court's ruling on prejudicial evidence is reviewed for abuse of discretion. *State v. Orn*, 197 Wn.2d 343, 350, 482 P.3d 913 (2021). Under

---

[5] Our court has held that it is not an abuse of discretion when a trial court denies a defendant's request to testify after the defense rested because the timing of the request is too late and would disrupt the trial schedule. *State v. Barnett*, 104 Wn. App. 191, 199, 16 P.3d 74 (2001); *State v. Wood,* 19 Wn. App. 2d 743, 768, 498 P.3d 968 (2021). Accordingly, because Duran did not raise his concerns before the defense planned to rest, the trial court did not err in denying Duran's request to testify.

Wash. R. Evid. (ER) 403, evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice. When evidence is likely to stimulate an emotional response rather than a rational decision, a danger of unfair prejudice exists. *State v. Beadle*, 173 Wn.2d 97, 120, 265 P.3d 863 (2011). A court considers the whole case when weighing the risk of unfair prejudice, including

> "the importance of the fact of consequence for which the evidence is offered in the context of the litigation, the strength and length of the chain of inferences necessary to establish the fact of consequence, the availability of alternative means of proof, whether the fact of consequence for which the evidence is offered is being disputed, and, where appropriate, the potential effectiveness of a limiting instruction."

*State v. Yusuf*, 21 Wn. App. 2d 960, 975, 512 P.3d 915 (2022) (quoting *State v. Bedada*, 13 Wn. App. 2d 185, 193-94, 463 P.3d 125 (2020)). If misconduct is not objected to or a curative instruction is not requested, then reversal is required only if the misconduct was so prejudicial that it could not have been cured by an objection and appropriate curative instruction. *State v. Stith*, 71 Wn. App. 14, 20, 856 P.2d 415 (1993).

" 'The cumulative error doctrine applies where a combination of trial errors denies the accused a fair trial even where any one of the errors, taken individually, may not justify reversal.' " *State v. Meza*, 26 Wn. App. 2d 604, 624, 529 P.3d 398 (2023) (quoting *In re Det. of Coe*, 175 Wn.2d 482, 515, 286 P.3d 29 (2012)). The test " 'is whether the totality of circumstances substantially prejudiced the defendant and denied him a fair trial.' " *Meza*, 26 Wn. App. 2d at 624 (quoting *In re Pers. Restraint of Cross*, 180 Wn.2d 664, 690, 327 P.3d 660

(2014)). When the evidence against a defendant is overwhelming, cumulative error will not require reversal. *Meza*, 26 Wn. App. 2d at 624.

1. Sergeant Polinder's Testimony

First, Duran insists that Sergeant Polinder's testimony was improperly prejudicial when Polinder referred to K.E. as the victim. Duran objected to the testimony at trial, and the court found it was not a particularly serious violation, and a curative instruction was appropriate. This court has held that a single reference to a prosecuting witness as "victim" is harmless when viewed in the context of the entire trial. *State v. Alger*, 31 Wn. App. 244, 248, 640 P.2d 44 (1982). Here, Polinder referred to K.E. as a victim only once before Duran objected. We find that the court did not err when it sustained the objection and gave a curative instruction.

Second, Duran contends Sergeant Polinder's testimony was prejudicial when he stated that Duran said, "he was into drugs and a heavy user at the time." Even though Duran's concerns stem from an alleged violation of a motion in limine, because Duran did not object at trial, we must evaluate if the misconduct was so prejudicial that it could not have been cured by an objection or curative instruction. Before Polinder's comment, the State asked Polinder what Duran's response was when he interviewed Duran about being the Birch Bay area. This was a normal line of questioning about Polinder's encounter with Duran and not an attempt to solicit testimony inappropriately. Even if the comment was prejudicial, the reference to Duran's drug use was made only once in Polinder's testimony. If objected to, the comment was curable by instruction.

Any prejudice caused by the comment about Duran's drug use was minimal; therefore Polinder's statement was harmless.

### 2. K.E.'s Testimony

Duran contends that the court unfairly admitted prejudicial evidence when K.E. testified that: (1) the night of the event, Duran told her he just got out of jail, (2) she completed rehabilitation and was clean and sober, and (3) she had suicidal thoughts after the event.

First, Duran objected at trial to K.E.'s testimony that Duran stated he just got out of jail, and the court gave a curative instruction. The court stated that the comment on Duran's incarceration was brief and a general statement. The statement was not enough to prejudice Duran because K.E. did not state why Duran was in jail or how long he was there. Therefore, K.E.'s statement about Duran's incarceration was not prejudicial.

Next, Duran did not object to K.E.'s testimony that she was clean and sober.[6] K.E.'s testimony was in response to a question by the State asking her to elaborate on a previous answer. Contrary to Duran's assertion, it does not appear that the question was asked to inflame the jury's passions. Any prejudice that was created by K.E.'s statement was minimal.

Lastly, Duran contends that K.E.'s comment about suicidal thoughts was unfairly prejudicial. Duran objected to the testimony at trial, and the trial court

---

[6] K.E. previously stated that she did not consider herself in the same place today that she was in 2012. The State then asked her to elaborate on that answer.

overruled the objection.  Like K.E.'s sobriety statement, K.E.'s comment on her suicidal thoughts was in response to the State asking her to elaborate on a previous answer.[7]  The State likely sought clarification, rather than attempting to stimulate an emotional response.  The reference was only made once.  Duran has not demonstrated that he was prejudiced by this evidence.

### 3. Cumulative Impact of Evidence

"A defendant may be entitled to a new trial when cumulative errors produce a trial that is fundamentally unfair."  *State v. Emery*, 174 Wn.2d 741, 766, 278 P.3d 653 (2012).  The cumulative error doctrine applies "where a combination of trial errors denies the accused a fair trial even where any one of the errors, taken individually, may not justify reversal."  *Coe*, 175 Wn.2d at 515.  In total, there were two violations of the order regarding the motions in limine: Sergeant Polinder's reference to K.E. as a victim and K.E.'s comment that Duran said he just got out of jail.  Both violations were objected to and neutralized by the court with curative instructions.  The violations were isolated incidents, unlikely to cumulatively impact Duran's trial.  The additional claims of prejudice were isolated, brief comments that were not substantially prejudicial given the record.  The errors did not cumulatively impact the fairness of Duran's trial.

### Community Conditions

Lastly, Duran challenges the imposed community conditions, claiming they are either unconstitutionally vague or lack statutory authority. The State contends

---

[7]  The State said that K.E. testified that if she didn't block out what happened to her, she would not be here.  The State then asked K.E. what she meant by that.

that Duran's community conditions should be remanded or are not ripe for review. We affirm the conditions concerning home visits and the consumption of alcohol, but remand for the trial court to address the conditions about polygraph fees, refraining from possessing and purchasing alcohol, and entering a business where alcohol is the main commodity.

We review a trial court's imposition of crime-related community custody conditions for abuse of discretion. *State v. Irwin*, 191 Wn. App. 644, 656, 364 P.3d 830 (2015). We will reverse if the conditions are manifestly unreasonable. *State v. Nguyen*, 191 Wn.2d 671, 678, 425 P.3d 847 (2018). A trial court's imposition of an unconstitutional condition is manifestly unreasonable. *Nguyen*, 191 Wn.2d at 678. Under former RCW 9.94A.703(3) (2009), the trial court may order the defendant to remain within, or outside of, a specified geographical boundary, refrain from consuming alcohol, and comply with any crime-related prohibitions. "Crime-related prohibition[s]" are defined as "order[s] of a court prohibiting conduct that directly relates to the circumstances of the crime for which the offender has been convicted." RCW 9.94A.030(10).

1. Geographic Boundaries

Duran asserts that the court improperly gave unfettered discretion to the community corrections officer about the geographic boundaries of his community conditions. Under former RCW 9.94A.703(3), as part of the community custody conditions, the court may order an offender to "remain within, or outside of, a specified geographical boundary." Duran's community custody condition did not state a specific boundary. Rather, it stated that boundaries would be set by the

DOC in writing. This court has held that an order for a defendant to remain within a prescribed geographical boundary as set forth in writing by a community corrections officer is authorized by the legislature. *State v. Lundstrom*, 34 Wn. App. 2d 977, 983, 572 P.3d 1243 (2025) (holding that the court complied with its statutory obligation when it ordered a geographic boundary condition as set forth in writing). We affirm the geographic boundary condition.

    2. Polygraph Assessments

Duran alleges that it was improper for the court to order him to pay polygraph fees because he was indigent. Courts have held that legal financial obligations (LFOs) " 'may not be imposed if it appears there is no likelihood the defendant's indigency will end.' " *State v. Duncan*, 185 Wn.2d 430, 437, 374 P.3d 83 (2016) (internal quotation marks omitted) (quoting *State v. Curry*, 118 Wn.2d 911, 915, 829 P.2d 166 (1992)). Our Supreme Court has recognized the problems with imposing LFOs on indigent defendants. Problems include "increased difficulty in reentering society, the doubtful recoupment of money by the government, and inequities in administration." *State v. Blazina*, 182 Wn.2d 827, 835, 344 P.3d 680 (2015). Furthermore, the Supreme Court held that any discretionary costs on indigent defendants are prohibited. *State v. Ramirez*, 191 Wn.2d 732, 739, 426 P.3d 714 (2018). Aside from mandatory costs, most other costs are discretionary. *State v. Clark*, 195 Wn. App. 868, 872, 381 P.3d 198 (2016). For Duran, polygraph fees were a crime-related condition, and therefore, discretionary. Former RCW 9.94A.703(3). Since Duran is indigent, he should

not be ordered to pay for polygraph fees. We remand for the court to strike the polygraph fees.

   3. Refrain from Consuming, Possessing, Purchasing Alcohol, and
      Entering a Business Where Alcohol is the Main Commodity

Duran contends that the State lacks authority to order him not to consume, possess, or purchase alcohol. Under former RCW 9.94A.703(3), unless waived by the court, the court may order an offender to refrain from consuming alcohol. The statute does not provide authority to order an offender to refrain from possessing, purchasing alcohol, or entering a business where alcohol is the main commodity. We affirm the condition to refrain from consuming alcohol, but remand to strike the conditions about possessing alcohol, purchasing alcohol, and entering a business with alcohol as the main commodity.

   4. Home Visits

Duran challenges the condition of home visits because it provides DOC warrantless access to Duran's home without authority of law. Our Supreme Court has held that the condition of home visits as written does not authorize any searches. *State v. Cates*, 183 Wn.2d 531, 535, 354 P.3d 832 (2015). A pre-enforcement challenge to a community custody condition is ripe for review when " 'the issues raised are primarily legal, do not require further factual development, and the challenged action is final.' " *State v. Nelson*, 4 Wn.3d 482, 494, 565 P.3d 906 (2025) (internal quotation marks omitted) (quoting *Cates*, 183 Wn.2d at 534). A future home visit may violate the law, but that depends on the particular circumstances of the attempted enforcement. *Cates*, 183 Wn.2d at 535; *Nelson,*

4 Wn.3d at 496 (holding that a pre-enforcement challenge is not ripe for review). Ultimately, this challenge is not ripe for review; the State must attempt to conduct a visit for Duran to challenge the condition. We affirm this community custody condition.

We affirm, but remand for the trial court to strike the community custody conditions regarding Duran paying for polygraph assessments, possessing and purchasing alcohol, and entering a business with alcohol as the main commodity.

_____

WE CONCUR:

_____        _____
Díaz, J.                                 Chung, J.